# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| PAUL J. OUZENNE, *et al*, | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-16-2563 |
| | § | |
| DEUTSCHE BANK NATIONAL TRUST COMPANY, | § | |
| AS TRUSTEE FOR SOUNDVIEW HOME LOAN | § | |
| TRUST 2006-3, ASSET-BACKED CERTIFICATES, | § | |
| SERIES 2006-3 | § | |
| | § | |
| *Defendant*. | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the court are (1) plaintiffs Paul J. Ouzenne and Patricia A. Ouzenne's motion for remand (Dkt. 11), and (2) defendant Deutsche Bank National Trust Company, as Trustee for Soundview Home Loan Trust 2006-3's ("Deutsche Bank") motion for summary judgment (Dkt. 15). The Ouzennes also filed (3) a motion for a continuance, (4) a request for an oral hearing, (5) objections to Deutsche Bank's summary judgment evidence (Dkt. 16), and (6) an objection to Deutsche Bank's brief against remand (Dkt. 20 at 4).

The court has considered the motions, responses, objections, evidentiary record, and applicable law. The court finds that the Ouzennes' objection to Deutsche Bank's brief against remand (Dkt. 20 at 4) is MOOT, and that their motion for remand (Dkt. 11) should be DENIED. The court also finds that the Ouzennes' motion for continuance (Dkt. 16) should be DENIED, their request for an oral hearing (Dkt. 16) should be DENIED, and their objections to Deutsche Bank's summary judgment evidence (Dkt. 16) should be OVERRULED. Finally, Deutsche Bank's motion for summary judgment (Dkt. 15) should be GRANTED.

## II. BACKGROUND

This is a dispute over real property located at 3933 King Street, Houston, Texas, 77026 (the "Property"). Dkt. 15. On January 26, 2006, the Ouzennes obtained a home equity loan from Centex Home Equity Company LLC ("Centex"). Dkt. 15, Ex. A-1. The Ouzennes signed a Texas Home Equity Adjustable Rate Note with an original principal amount of $145,600.00, that granted Centex a security interest in the Property. Dkt. 15, Exs. A-1, C. On January 11, 2012, Centex assigned the note and the security interest to Deutsche Bank. Dkt. 15, Ex. D. Wells Fargo Bank, N.A. ("Wells Fargo") doing business as America's Servicing Company ("ASC") is the mortgage servicer. Dkt. 15, Ex. A.

In October 2011, the Ouzennes failed to make their payment and subsequently defaulted on the mortgage. Dkt. 15, Ex. A-2. On May 22, 2012, ASC sent the Ouzennes a notice of default ("2012 Notice of Default") specifying the amount to cure the default and stating that to avoid acceleration, the amount needed to be paid before June 25, 2012. Dkt. 15, Ex. A-3. On September 19, 2012, Deutsche Bank sent the Ouzennes a notice of acceleration because the Ouzennes failed to cure their default. Dkt. 15, Ex. B-1. On December 16, 2014, Deutsche Bank subsequently sent the Ouzennes a second notice of default and intent to accelerate. Dkt. 15, Ex. B-2 ("2014 Notice of Default").

The Ouzennes failed to cure the default. Dkt. 15, Ex. E. On March 18, 2016, Deutsche Bank filed a Rule 736 Application for foreclosure in the 164th Judicial District Court of Harris County, Texas. *Id.* (citing Tex. R. Civ. P. 736). On June 24, 2016, the Ouzennes filed their original petition in the 234th Judicial District Court of Harris County, Texas, seeking an injunction and declaratory judgment to prevent Deutsche Bank from foreclosing. Dkt. 1, Ex. D-1. The Ouzennes argued that Deutsche Bank is not the holder of the note, and that the statute of limitations and res judicata

preclude recovery and bar foreclosure. On July 20, 2016, the action was transferred to the 164th Judicial District Court of Harris County, Texas. Dkt. 1.

On August 22, 2016, Deutsche Bank removed the case to federal court. Dkt. 1. On September 21, 2016, the Ouzennes filed a motion to remand. Dkt. 11. Deutsche Bank filed its response. Dkt. 14. On December 20, 2016, Deutsche Bank filed a motion for summary judgment. Dkt. 15. On January 10, 2017, the Ouzennes filed their response, a motion for continuance, and a request for oral hearing. Dkt. 16. Pursuant to the court's January 23, 2017 order requesting the parties file any supplemental briefing on the question of diversity jurisdiction (Dkt. 17), each party filed a supplemental brief. *See* Dkt. 19 (Deutsche Bank Suppl. Br.); Dkt. 20 (Ouzennes' Suppl. Br.).

In objection to the selected portions of the Pooling and Servicing Agreement ("PSA") that Deutsche Bank cited to in its brief, the Ouzennes requested Deutsche Bank produce the entire PSA. Dkt. 20 at 4. Following the court's February 14, 2017 order to produce the PSA, Deutsche Bank filed the full text of the trust's PSA. Dkt. 23, Ex. A.

The court will first address the Ouzennes' motion for remand, then Deutsche Bank's motion for summary judgment and the Ouzennes' objections.

## II. MOTION FOR REMAND

### A. Legal Standard

A party may remove to federal court "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441 (2012). The party seeking removal bears the burden of establishing federal jurisdiction. *Willy v. Coastal Corp.*, 855 F.2d 1160, 1164 (5th Cir. 1988). This statutory right to removal is strictly construed because "removal jurisdiction raises significant federalism concerns." *Id.* (citations omitted). "[A]ny doubt about the propriety of removal must be resolved in favor of remand." *Gasch v. Hartford Accident*

*& Indem. Co.*, 491 F.3d 278, 281–82 (5th Cir. 2007). Deutsche Bank claims that the court has removal jurisdiction based on diversity of citizenship. Dkt. 1 at 3–6. Subject matter jurisdiction premised on diversity requires (1) complete diversity of citizenship between the parties and (2) an amount in controversy in excess of $75,000. 28 U.S.C. § 1332 (2012).

Courts have taken a two-step approach to determining the citizenship of a trust for purposes of diversity: (1) identify whether the trust or the trustee is the real and substantial party to the controversy, and (2) if the trust is the real party, then determine whether it is a "traditional trust" where a court looks to the citizenship of the trustee, or whether it is a "business trust" (unincorporated association) where a court looks to the citizenship of the trust's members to determine jurisdiction. *Americold Realty Tr. v. Conagra Foods, Inc.*, 136 S. Ct. 1012, 1016 (2016).

At the outset, the court must determine who is the real and substantial party to the controversy that is being haled to court—the trust or the trustee. "[A] federal court must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy." *Corfield v. Dall. Glen Hills LP*, 355 F.3d 853, 857 (5th Cir. 2003). The two main U.S. Supreme Court cases addressing the citizenship of a trust, *Americold* and *Navarro*, do not "limit[] an entity's membership to its trustees just because the entity happens to call itself a trust." *Americold*, 136 S. Ct. at 1016; *Navarro Savs. Ass'n v. Lee*, 446 U.S. 458, 100 S. Ct. 1779 (1980); *see also, e.g.*, *Juarez v. DHI Mortg., Ltd.*, No. CV H-15-3534, 2016 WL 3906296, at *2 (S.D. Tex. July 19, 2016) (Miller, J.); *Wells Fargo Bank, N.A. v. Transcon. Realty Inv'rs, Inc.*, No. 3:14-CV-3565-BN, 2016 WL 3570648, at *2 (N.D. Tex. July 1, 2016).

If the trustee is suing or is being sued in his or her own name, or if the trust is a traditional trust, then the *Navarro* standard applies. 446 U.S. at 458. Trustees that have exclusive authority over the property (i.e. the declaration of the trust "authorizes the trustees to take legal title to trust

4

assets, to invest those assets for the benefit of the shareholders, and to sue and be sued in their capacity as trustees") may "sue in their own right, without regard to the citizenship of the trust beneficiaries." *Id.* at 464–66. In these instances, the court will look to the citizenship of the trustee alone to determine jurisdiction.

If the trust is an unincorporated artificial business entity like the trust considered in *Americold*, the "shareholders appear to be in the same position as the shareholders of a joint-stock company or the partners of a limited partnership." *Americold*, 136 S. Ct. at 1016. In those cases, the court looks to the citizenship of all of the trust's members. *Id.*

**B. Analysis**

The Ouzennes contend that remand is appropriate because Deutsche Bank's notice of removal was untimely and the amount in controversy does not exceed $75,000. Dkt. 11.

*1. Notice of Removal*

The Ouzennes argue that Deutsche Bank's removal was untimely because over 30 days have passed after their petition was filed in state court. Dkt. 11. Deutsche Bank counters that "the 30-day removal window is triggered by formal service of process on Defendant" and Deutsche Bank had not been properly served in this suit. Dkts. 8, 14.

Notice of removal must "be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within 30 days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter." 28 U.S.C. § 1441(b). "[A] defendant's time to remove is triggered by simultaneous service of the summons and complaint, or receipt of the complaint, 'through service or otherwise,' after and apart from service of the summons, but not by mere receipt

of the complaint unattended by any formal service." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347–48, 119 S. Ct. 1322 (1999).

On June 24, 2016, the Ouzennes filed their petition in state court. Dkt. 1, Ex. D-1. In the petition, the Ouzennes admit that the defendant had not been formally served because the parties have previously appeared in another case. *Id.* On August 22, 2016, Deutsche Bank filed its notice of removal, stating that it had not been served and that no citation had been requested or issued. Dkt. 1 at 2; Dkt. 1, Ex. D (state court docket sheet). The court agrees with Deutsche Bank that removal was timely because Deutsche Bank was never served with formal process. Contrary to the Ouzennes' argument, the 30-day window to remove did not begin on the day the Ouzennes commenced this action. Dkt. 11. While Deutsche Bank was formerly served in another controversy, the Ouzennes needed to serve Deutsche Bank with formal service of process on *this claim* for the 30-day window for removal to begin. *See* § 1446(b). Because Deutsche Bank was not served with formal process in this suit, the court finds that removal was timely.

*2. Amount in Controversy*

Next, the Ouzennes argue that the amount in controversy requirement has not been met because the only damages requested in the state court petition are for attorneys' fees which are not expected to reach $75,000. Dkt. 11 at 4. Deutsche Bank argues that the Ouzennes' petition does not specify an amount of monetary relief, but seeks injunctive and declaratory relief. Dkt. 14. Therefore, the amount in controversy should be the value of the entire property as measured by the current appraised fair market value of the property. *Id.* at 4. The Ouzennes argue that an unverified appraised value "cannot unambiguously establish" the amount in controversy. Dkt. 11 at 5.

The amount in controversy is measured from the perspective of the plaintiff. *Vraney v. Cnty. of Pinellas*, 250 F.2d 617, 618 (5th Cir. 1958) (per curiam). In an action for declaratory or injunctive

6

relief, the amount in controversy is the "value of the object of the litigation," or "the value of the right to be protected or the extent of the injury to be prevented." *Farkas v. GMAC Mortg., LLC*, 737 F.3d 338, 341 (5th Cir. 2013) (per curiam); *Leininger v. Leininger*, 705 F.2d 727, 729 (5th Cir. 1983).

The court considers the fair market value of the property as the amount in controversy and that Deutsche Bank as met this requirement for establishing subject matter jurisdiction. *See Manrique v. Bank of Am. Corp.*, No. 1:15-CV-47, 2015 WL 12743608, at *2–3 (S.D. Tex. Oct. 23, 2015) (using fair market value of the property as the amount in controversy where plaintiff sought injunctive relief against foreclosure); *see also Farkas*, 737 F.3d at 341 ("Under any reasonable basis for valuing the properties, whether purchase price, market value, or outstanding principal and interest, the amount in controversy threshold is exceeded and federal subject-matter jurisdiction exists."). Here, Deutsche Bank presents evidence from the Harris County Appraisal District of the fair market value of the property valued at $187,495.00. Dkt. 1, Ex. E.[1] The Ouzennes' petition facially requests permanent injunctive relief, which establishes that the entire property is the object of this litigation. Dkt. 1, Ex. D-1 at 2. Because the Ouzennes are seeking permanent injunctive relief, the court finds the property's fair market value satisfies the amount in controversy requirement.

---

[1] In Deutsche Bank's response to the motion, it cites that the fair market value of the property is $179,050.00 and not $187,495.00, which is the amount Deutsche Bank listed in its notice of removal and in the Harris County Appraisal District information. *Compare* Dkt. 11 at 4 (Def.'s Resp. to Mot. to Remand) *with* Dkt. 1 at 6 (Notice of Removal) *and* Dkt. 1, Ex. E (Harris County Appraisal District Real Property Account Information). In either case, the minimum amount in controversy requirement has been met.

*3. Complete Diversity of Parties*

While the parties do not dispute that complete diversity exists (Dkts. 1, 11), the court may *sua sponte* review its jurisdiction. Fed. R. Civ. P. 12(h)(3); *see also Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583, 119 S. Ct. 1563 (1999) ("subject-matter delineations must be policed by the courts on their own initiative even at the highest level"). In light of the *Americold* decision, the court ordered the parties to submit briefings on the question of diversity jurisdiction, and each party filed supplemental briefing. Dkts. 17, 19, 20; 136 S. Ct. at 1026.

The Ouzennes objected to the portions of the PSA that Deutsche Bank cited to in its briefing and moved to strike the portions offered by Deutsche Bank if it did not produce the entire PSA. Dkt. 20 at 4. The court ordered Deutsche Bank to produce the full copy of the PSA (Dkt. 21) and Deutsche Bank complied (Dkt. 23, Ex. A). Therefore, the Ouzennes' objection to the PSA cited in Deutsche Bank's brief is MOOT.

When evaluating diversity jurisdiction, a court looks to the powers bestowed upon the trustee to determine whether the trust or the trustee is the real party in interest. *Americold*, 136 S. Ct. at 1026. The court looks to the trustee's citizenship rather than the citizenship of the members of the trust if Deutsche Bank can show that the declaration of the trust "authorizes the trustees to [, for example,] take legal title to trust assets, to invest those assets for the benefit of the shareholders, and to sue and be sued in their capacity as trustees." *Navarro*, 446 U.S. 462–66.

Deutsche Bank points to the following provisions from the PSA to support its claim that the trustee is the real party to the controversy:

> The Depositor, concurrently with the execution and delivery hereof, does hereby transfer, assign, set over and otherwise convey in trust to the Trustee without recourse for the benefit of the Certificateholders all the right, title and interest of the Depositor.

8

> In connection with such transfer and assignment, the Depositor, does hereby deliver to, and deposit with, the Trustee (or the Custodian on behalf of the Trustee), the following documents or instruments with respect to each Initial Mortgage Loan so transferred and assigned and in accordance with Section 2.08, deliver or caused to be delivered to the Trustee (or the Custodian on behalf of the Trustee) with respect to each Subsequent Mortgage Loan, the following documents or instruments (with respect to each Mortgage Loan, a "Mortgage File").

Dkt. 19, Ex. A. § 2.01

> Except as expressly provided for herein, no Certificateholder shall have any right to vote or in any manner otherwise control the operation and management of the Trust, or the obligations of the parties hereto, nor shall anything herein set forth or contained in the terms of the Certificates be construed so as to constitute the Certificateholders from time to time as partners or members of an association; nor shall any Certificateholder be under any liability to any third person by reason of any action taken by the parties to this Agreement pursuant to any provision hereof.
>
> No Certificateholder shall have any right by virtue of any provision of this Agreement to institute any suit, action or proceeding in equity or at law upon or under or with respect to this Agreement, unless such Holder previously shall have given to the Trustee a written notice of default and of the continuance thereof, as hereinbefore provided, and unless also the Holders of Certificates entitled to at least 25% of the Voting Rights shall have made written request upon the Trustee to institute such action, suit or proceeding in its own name as Trustee hereunder and shall have offered to the Trustee such reasonable indemnity as it may require against the costs, expenses and liabilities to be incurred therein or thereby, and the Trustee for 15 days after its receipt of such notice, request and offer of indemnity, shall have neglected or refused to institute any such action, suit or proceeding.

*Id.* § 11.03.

It is clear from the provisions of the PSA cited by Deutsche Bank in this case that the trustee has legal title of the trust assets as set out in *Navarro*. The PSA also states that Certificateholders cannot "control the operation and management of the Trust," and that those powers are reserved for the trustee. Dkt. 19, Ex. A. § 11.03; *see Justice v. Wells Fargo Bank Nat'l Ass'n*, No. 15-20615 (5th Cir. Mar. 22, 2017), slip op. (unpublished opinion) (holding whether "the

9

trust [otherwise] may depart from conventional forms in other respects has no bearing" on the real-and-substantial-control question). While the Certificateholders may vote to override the trustee's decision to defend or initiate a lawsuit, such powers are limited to extenuating circumstances that require the Certificateholders to indemnify the trustee. *See May v. New Century Mortg. Corp.*, No. 4:16-cv-1272, 2016 U.S. Dist. LEXIS 128099, at *14 (S.D. Tex. Sept. 16, 2016) (holding trust was the real party to the controversy because Certificateholders only had the power to remove the trustee). Based on the evidence, the court finds that Deutsche Bank has satisfied its burden of proving by a preponderance of the evidence that it is the real party to the controversy, and therefore only the trustee's citizenship is considered when determining subject matter jurisdiction.

As a national bank, Deutsche Bank "is a citizen of the State in which its main office, as set forth in its articles of association, is located." *Wachovia Bank, N.A. v. Schmidt*, 546 U.S. 303, 307, 126 S. Ct. 941 (2006). Deutsche Bank contends that it is a citizen of California, and the Ouzennes are citizens of Texas. Dkt. 8. Because there is complete diversity between the parties and the amount in controversy exceeds $75,000, the court concludes that subject matter jurisdiction exists and that removal was proper. Accordingly, the Ouzennes' motion for remand is DENIED.

### IV. MOTION FOR SUMMARY JUDGMENT

**A.     Legal Standard**

A court shall grant summary judgment when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "[A] fact is genuinely in dispute only if a reasonable jury could return a verdict for the non-moving party." *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986). If the party meets its

burden, the burden shifts to the non-moving party to set forth specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(e). The court must view the evidence in the light most favorable to the non-movant and draw all justifiable inferences in favor of the non-movant. *Envtl. Conservation Org. v. City of Dall., Tex.*, 529 F.3d 519, 524 (5th Cir. 2008).

**B.     Analysis**

Deutsche Bank seeks declaratory judgment that it is the holder of the Note and is able to foreclose on the Property. Dkt. 15 at 13. In response, the Ouzennes argue that Deutsche Bank does not have standing to foreclose on the property because Deutsche Bank's summary judgment evidence does not conclusively show that Deutsche Bank either (1) holds the note[2], or (2) has a valid[3] assignment of the deed of trust. Dkt. 16. The Ouzennes also argue that the statute of limitations precludes Deutsche Bank from enforcing the note. *Id.* The court will first address the Ouzennes' arguments on standing before addressing the issue of statute of limitations.

*1. Original Note*

The Ouzennes argued in their complaint that Deutsche Bank did not hold the original note and therefore lacked standing, but the Ouzennes later concede in their response that the production of the original note is not necessary to foreclose. *Compare* Dkt. 1 at 4, *with* Dkt. 16 at 3 ("The Plaintiff does not dispute fact that the production of the original note is not necessary to foreclose pursuant to a deed of trust . . ."). In their response, the Ouzennes moved for a continuance and a request for oral hearing to inspect the original note. Dkt. 16 at 2. Because the production of the

---

[2] The Ouzennes' response alleges that "plaintiff" (Dkt. 16 at 4) does not hold the note, but the court assumes that the Ouzennes intended to assert that the *defendant* does not hold the note.

[3] In their response, the Ouzennes allege that the assignment is "vote and invalid," (Dkt. 16 at 4); However, the court assumes that the Ouzennes intended to allege that the assignment is "*void* and invalid."

original note is not necessary, which the Ouzennes conceded, the court finds that a hearing on this matter is not needed. Accordingly, the Ouzennes' motion for continuance is DENIED and their request for oral hearing is DENIED.

*2. Lack of Standing*

The Ouzennes argue that Wells Fargo, without authority, assigned the deed of trust to Deutsche Bank. Dkt. 16. Deutsche Bank argues that there is sufficient evidence in the record to show that it is the holder of the note and therefore it has authority to foreclose on the Property. Dkt. 15 at 3–4. Deutsche Bank provides the Corporate Assignment of Deed of Trust as evidence that the Deed of Trust was properly assigned from Centex, the assignor, to Deutsche Bank, the assignee. Dkt. 15, Ex. D.

The court finds, however, that the Ouzennes have no standing to challenge the assignment of the deed of trust on the grounds that Wells Fargo lacked authority. Under Texas law, a nonparty to a transaction lacks standing to claim that an assignment of a deed of trust was executed without authorization. *Reinagel v. Deutsche Bank Nat'l Trust Co.*, 735 F.3d 220, 226–27 (5th Cir. 2013). ("[Texas] law is settled that the obligors of a claim . . . may not defend [against an assignee's effort to enforce the obligation] on any ground which renders the assignment voidable only") (citing *Tri-Cities Const., Inc. v. Am. Nat'l. Ins. Co.*, 523 S.W.2d 426, 430 (Tex. Civ. App.—Houston [1st Dist.] 1975, no writ); *see Morlock, L.L.C. v. Bank of New York*, 448 S.W.3d 514, 517 (Tex. App.—Houston [1st Dist.] 2014, pet. denied) (citing *Vazquez v. Deutsche Bank Nat'l Trust Co., N.A.*, 441 S.W.3d 783, 785 (Tex. App.—Houston [1st Dist.] 2014, no pet.)) ("A plaintiff who is not a party to an assignment lacks standing to challenge the assignment on grounds which render it merely voidable at the election of one of the parties.").

Under Texas law, an assignment executed by an unauthorized agent is merely voidable at the election of the defrauded assignor. *Reinagel*, 722 F.3d at 706–07. Because the Ouzennes were not a party to the assignment, the court finds that the Ouzennes lack standing to challenge the validity of the assignment of the deed of trust from Centex to Deutsche Bank.

### 3. Invalid Assignment

Even if the Ouzennes did have standing to challenge the assignment of the deed of trust, the Ouzennes' substantive claim still fails. The Ouzennes argue that *Wells Fargo's* assignment of the deed of trust was void and invalid. Dkt. 16 (emphasis added). However, Wells Fargo did not assign the deed of trust as the Ouzennes assert, but rather merely served as attorney in fact for Centex in Centex's assignment of the deed of trust to Deutsche Bank. Dkt. 15, Ex. D (Corporate Assignment of Deed of Trust). Once Deutsche Bank proves that it is the owner of the deed of trust, as it does here, "it establishe[s] its interest in the property and right to foreclose as a matter of law regardless of whether it was also a holder or the owner of the note." *See Morlock*, 448 S.W.3d at 519.

On January 11, 2012, Centex assigned the deed of trust to Deutsche Bank, and the assignment was subsequently filed with the County Clerk of Harris County, Texas on January 19, 2012. Dkt. 15, Ex. D. Under Texas law, assignment of a mortgage "explicitly include[s] the power to foreclose by the deed of trust." *Martins v. Bac Home Loans Servicing, L.P.*, 722 F.3d 249, 255 (5th Cir. 2013). Viewing the evidence in the light most favorable to the Ouzennes, the court is unpersuaded by the Ouzennes' argument that the assignment was void and invalid or that Deutsche Bank did not have the authority to foreclose.

*4. Objections to Deutsche Bank's Summary Judgment Evidence*

The Ouzennes also argue that Deutsche Bank has not provided sufficient summary judgment evidence to establish that it has standing to foreclose. Dkt. 16. The Ouzennes object to the Affidavit of Kimberly Ann Mueggenberg because (1) paragraph five of the affidavit is conclusory when it states that "Wells Fargo is the mortgage servicer" without providing evidential support for her conclusion, and (2) the affidavit does not state that the original note was provided to Wells Fargo or how or why Wells Fargo acquired a copy of the note. Dkt. 16 at 3 (citing Dkt. 15, Ex. A (Mueggenberg Aff.)) The Ouzennes also object to the copy of the Texas Home Equity Security Instrument (Dkt. 15, Ex. C) because Deutsche Bank's motion does not provide evidence to show how or why Wells Fargo acquired an interest in the deed of trust or how it became a "servicer." *Id*.

After reviewing the exhibits, the court finds that the corresponding documents are sufficient to establish that Wells Fargo is the servicer on the loan and support Deutsche Bank's motion for summary judgment. *See* Dkt. 15, Exs. A, C. The property records provided by Deutsche Bank and referenced in Deutsche Bank's motion show that Wells Fargo is the mortgage servicer, that Deutsche Bank holds the deed of trust, and that Deutsche Bank has the authority to foreclose on the property. Dkt. 15, Exs. A-3, B-1, B-2, D. Therefore, the Ouzennes' objections to the Mueggenberg Affidavit and the Texas Home Equity Security Instrument are OVERRULED.

The Ouzennes also dispute Deutsche Bank's standing to foreclose by arguing that Deutsche Bank has not established a chain of title sufficient to show that the note or deed of trust were properly assigned. Dkt. 16 at 2. The court declines to address this argument, however, because the Ouzennes make a mere one-sentence, conclusory statement without providing additional support. The court agrees with Deutsche Bank that it holds the note, is a valid assignee, and has standing to foreclose.

*5. Statute of Limitations and Res Judicata*

The Ouzennes argue that the statute of limitations and res judicata preclude Deutsche Bank from enforcing the note. Dkt. 16. Deutsche Bank argues that it is entitled to foreclose on the Property because Deutsche Bank abandoned its Notice of Acceleration (Dkt. 15, Ex. B-1), which reset the accrual date of the cause of action. Dkt. 15 at 4–5. Texas law has a four-year statute of limitations for a foreclosure sale of real property under a deed of trust. Tex. Civ. Prac. & Rem. Code Ann. § 16.035(b). When the four-year period expires, "the real property lien and power of sale to enforce the lien become void." *Id*. § 16.035(d).

If the deed of trust contains an optional acceleration clause, "the action accrues only when the holder actually exercises its option to accelerate." *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 566 (Tex. 2001) (first citing *Hammann v. H.J. McMullen & Co.*, 62 S.W.2d 59, 61 (Tex. 1933); then citing *Curtis v. Speck*, 130 S.W.2d 348, 351 (Tex. Civ. App.—Galveston 1939, writ ref'd)). "Effective acceleration requires two acts: (1) notice of intent to accelerate, and (2) notice of acceleration." *Id*. (first citing *Shumway v. Horizon Credit Corp.*, 801 S.W.2d 890, 892 (Tex. 1991); then citing *Ogden v. Gibraltar Sav. Ass'n*, 640 S.W.2d 232, 233 (Tex. 1982)).

Parties can abandon acceleration by agreement. *Khan v. GBAK Props., Inc.*, 371 S.W.3d 347, 356 (Tex. App—Houston [1st Dist.] 2012, no pet.). After giving notice of acceleration, a note holder can abandon acceleration by continuing to accept payments on the loan "without exacting any remedies available to it upon declared maturity." *Holy Cross,* 44 S.W.3d at 566–67. In addition, a note holder can abandon acceleration unilaterally by sending a notice of rescission. *See Leonard v. Ocwen Loan Servicing, L.L.C.*, 616 Fed. App'x 677, 679–80 (5th Cir. 2015) (unpublished) (note holder abandoned acceleration by issuing a new notice of default and providing account statements for less than the accelerated amount); *see also Boren v. U.S. Nat'l Bank Ass'n*, 807 F.3d 99, 105–06

(5th Cir. 2015) (affirming *Leonard* and holding that a notice of default requiring less than the full amount due under the loan "unequivocally manifested an intent to abandon the previous acceleration" on the loan). When acceleration is abandoned, the original maturity date is restored. *Holy Cross*, 44 S.W.3d. at 567 (citing *Denbina v. City of Hurst*, 516 S.W.2d 460, 463 (Tex. Civ. App.—Tyler 1974, no writ).

Here, the mortgage servicer sent the Ouzennes a notice of default on May 22, 2012. Dkt. 15, Ex. A-3 (2012 Notice of Default). Because the Ouzennes failed to cure the default, Deutsche Bank sent the Ouzennes a notice of acceleration on September 19, 2012. Dkt. 15, Ex. B-1 ("Notice of Acceleration"). On December 16, 2014, Deutsche Bank subsequently sent the Ouzennes a second notice of default and intent to accelerate. Dkt. 15, Ex. B-2 ("2014 Notice of Default"). The 2014 Notice of Default did not state that the full amount of the loan was due, but rather it directed the Ouzennes to inquire further about the amount due and advised the Ouzennes that the failure to pay would lead to acceleration of the loan. *See* Dkt. 15, Ex. B-2. Because the 2014 Notice of Default requested an amount less than the full amount of the loan, the Ouzennes were put on notice of the abandonment of acceleration, and the 2014 Notice of Default operated as a rescission of the original Notice of Acceleration. *See Alvarado v. U.S. Bank Nat'l Ass'n.*, No. 15-51017, 2016 WL 3402587, at *2 (5th Cir. June 20, 2016) (a lender abandons his earlier acceleration by requesting a payment that is less than the full amount of the loan); *Boren*, 807 F.3d at 105–06; *Leonard*, 616 F. App'x at 680. Because the original Notice of Acceleration was abandoned in 2014, and Deutsche Bank brought the Rule 736 action on March 18, 2016, the court finds that Deutsche Bank brought the foreclosure claim within the four-year limitations period.

The Ouzennes also argue that res judicata precludes Deutsche Bank from enforcing the note. Dkt. 16 at 2. However, the court declines to address this because the Ouzennes merely provide

a conclusory statement without support for their argument. The court is not persuaded that the statute of limitations and res judicata prevent Deutsche Bank from enforcing the note. Accordingly, viewing the evidence in the light most favorable to the non-movant, the court finds that no genuine dispute as to material fact exists and Deutsche Bank is entitled to judgment as a matter of law. Therefore, Deutsche Bank's motion for summary judgment (Dkt. 15) is GRANTED.

## V. CONCLUSION

The Ouzennes' objection to Deutsche Bank's brief (Dkt. 20 at 4) is MOOT and their motion for remand (Dkt. 11) is DENIED. The Ouzennes' motion for continuance (Dkt. 16) is DENIED and their request for oral hearing (Dkt. 16) is DENIED. The Ouzennes' objections to Deutsche Bank's summary judgment evidence (i.e. the Mueggenberg Affidavit and the Texas Home Equity Security Instrument) are OVERRULED. Dkt. 16 at 3. Finally, Deutsche Bank's motion for summary judgment that it is the holder of the Note and is able to foreclose on the Property (Dkt. 15) is GRANTED.

Signed at Houston, Texas on April 24, 2017.

_____
Gray H. Miller
United States District Judge